IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re: Daniel Doyon | * Bk. Case No. 02-66141-SD |
| * * * * * * * | |
| Marc L. Jordan | * |
| v. | * Civil Action No. WMN-04-0050 |
| George Leibmann, Chapter 7 Trustee, et al. | * |

**MEMORANDUM**

This is an appeal from a decision of Judge E. Stephen Derby of the United States Bankruptcy Court for the District of Maryland significantly limiting the attorney's fees recoverable by Appellant Marc L. Jordan for his representation of Debtor Daniel Doyon in his Chapter 13 Bankruptcy proceedings. The relevant facts follow.

The Debtor's bankruptcy was commenced on October 16, 2002, as a no asset, Chapter 7 case. Debtor was represented by Appellant Marc L. Jordan. With the petition, Jordan filed the requisite Rule 2016(b) statement setting forth his fee of $1,500.00 for representing Debtor in the Chapter 7 proceedings. On February 11, 2003, Jordan filed a motion to convert the case from Chapter 7 to Chapter 13. On February 21, 2003, the Bankruptcy Court granted the motion to convert.

With the motion to convert, Jordan also filed a Rule

2016(b) Disclosure stating that he had agreed to accept $1,950.00 for the representation of Debtor in the Chapter 13 case. The Disclosure specified that in return for that fee Jordan

> agreed to render legal service for all aspects of the bankruptcy case, including:
>
> a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
>
> b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
>
> c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
>
> . . .
>
> e. advice and consultation on chapter 13, preparation of plan, amended schedules, motion to convert and proposed order.

Pl. 39.[1] The Disclosure specifically excluded representation for "adversary proceedings and contested matters." Id.[2] It also indicated that Jordan had already received $1,000.00 of the fee from Debtor. Id.

---

[1] The "Pl." designation referred to the pleading number on the bankruptcy docket.

[2] Jordan makes no claim that his representation encompassed these excluded categories.

2

On April 30, 2003, less than three months after filing the Rule 2016(b) Disclosure, Jordan filed a fee application for $6,142.50 for services rendered to Debtor in the Chapter 13 case. On June 25, 2003, Jordan filed a supplemental Rule 2016(b) Disclosure, making a claim for additional fees in the amount of $4,292.00. Two days later, on June 27, 2003, Jordan moved to withdraw his appearance.[3] The motion to withdraw was granted on July 2, 2003, and Debtor hired a new attorney to

---

[3] In the motion, Jordan provided no reason for the withdrawal. In his current pleadings, he is somewhat cryptic, if not inconsistent, as to why he filed this motion. In arguing that his withdrawal should not have influenced the Bankruptcy Court's determination of fees, he posits, "[w]ithdrawal of counsel is governed by the Maryland Rules of Professional Responsibility" and that "[u]nder those rules, withdrawal is mandatory if the client so requests." Reply Brief at 4. He immediately undermines any potential relevance to this argument with a footnote stating, "Appellant is not referring to the actual attorney/client relationship with the debtor in this case but is positing a hypothetical situation. The debtor has not waived any privileges with respect to communications with Appellant and has not authorized Appellant to make any such waiver." Id. at 4 n.2. Jordan was much more forthcoming in his representations to the Bankruptcy Court when arguing for his fees. Waiver or no waiver, in the hearing before that court on his application for compensation, Jordan disclosed, "I don't mind telling you that the only reason I filed [the motion to withdraw] was simply the time involved in this was just extraordinarily beyond what I was able to do. I mean I have a small office and, you know, there just came a point where there was no - you know, we weren't getting paid for the time, the time was being spent and just couldn't keep doing it." December 4, 2003 Hearing Transcript at 12. It is of note that in his opening brief in this appeal, Jordan represents that the decision was made by the Debtor; "[Debtor] directed Appellant not to spend more time on the matter." Appellant's Brief at 4.

3

whom he had to pay $2,000.00.

Debtor's Chapter 13 plan was never confirmed as Debtor was not making plan payments. On September 29, 2003, the Bankruptcy Court granted a motion filed by Appellee Heidi Richardson, Debtor's former spouse and current creditor, to re-convert the case to a Chapter 7.

On December 4, 2003, the Bankruptcy Court held a hearing on Jordan's fee application. On December 22, 2003, the Bankruptcy Court entered its Order Limiting Fees, in which the court denied Jordan's request for additional compensation and limited Jordan's compensation to the $1,000 already paid. It is from this order that Jordan now appeals.

The bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed <u>de novo</u>. <u>In re Park-Helena Corp.</u> 63 F.3d 877, 880 (9th Cir. 1995). The bankruptcy court's determination as to the proper amount of legal fees to be awarded is reviewed for an abuse of discretion, and that discretion is broad. <u>In re Mulberry Phosphate, Inc.</u>, 151 B.R. 948, 949 (M.D. Fla. 1992).

In denying any further compensation beyond what Jordan had already received, Judge Derby reasoned that Jordan was "bound by his original fee agreement for the Chapter 13 case" and "made [no] showing that would justify his claim for

4

additional fees." December 19, 2003 Order at 3-4. Noting that as Jordan had already represented Debtor in the Chapter 7 phase, the court opined that Jordan "would be hard pressed to assert that he did not know what he was getting into" when he agreed to handle the Chapter 13 phase for $1,950.00. Id. at 3. Judge Derby stated that he "rejects the last minute change of Mr. Jordan's fee arrangement with Debtor, two days before he was to withdraw, as having any weight whatsoever." Id. He further concluded that even that original flat fee must be reduced because Jordan failed to complete the representation. Id. [4]

Jordan argues that Judge Derby should not have bound him to his original fee agreement because "[f]ees in bankruptcy cases are not a matter for private agreement, but must are [sic] controlled by statute." Reply at 6.[5] To the contrary,

---

[4] Judge Derby also observed, and Jordan does not dispute, that "[i[n] this district fees for representing a debtor in a Chapter 13 case normally fell within a range of $1,000 to $1,500." Id. at 3. The $1,000 payment that Jordan has already received, is within that range. While perhaps at the low end, it is also true that Jordan never completed the Chapter 13 representation and significant additional attorney's fees were required to be paid because of Jordan's early withdrawal.

[5] As his only support for this proposition, Jordan cites Massachusetts Mutual Life Ins. Co. v. Brock, 405 F.2d 429 (5th Cir. 1968). Jordan's citation to Massachusetts Mutual is curious. In Massachusetts Mutual, the Fifth Circuit held that the fees awarded by the district court to the attorney and

because bankruptcy courts are to award fees under § 330 of the Bankruptcy Code that are comparable to attorney's fees outside of the bankruptcy context, bankruptcy courts have looked to fee agreements between the debtor and the debtor's counsel as a measure of reasonableness. See In Re Palladino, 267 B.R. 825, 831 (Bankr. E.D. Ill. 2001) (limiting fees to the terms of flat fee agreement, and observing "[t]he Court [] views the attorney/client relationship as one in which the terms of the engagement should normally be upheld, including the fee arrangement, so as not to unduly intrude upon the bargain struck between the parties who have entered into an important professional relationship").

That is not to say fee agreements control absolutely. There will be occasions when an agreed-upon fee, evaluated under the applicable factors,[6] is plainly excessive and must

---

trustee in a bankruptcy case should be significantly reduced because the district court failed to adequately consider the public interest of preserving the estate for its creditors. In enacting § 330 of the Bankruptcy Code, Congress expressly overruled Massachusetts Mutual on this precise point. In re Public Service Co. of New Hampshire, 93 B.R. 823, 829 (Bankr. D. N.H. 1988). Whatever precedential value Massachusetts Mutual might still have, it certainly does not stand for the proposition for which Jordan cites it.

[6] The evaluation of fee applications in this circuit includes an analysis of the following factors:

6

be reduced. There undoubtedly will be other occasions when unforeseen circumstances, or demands for representation that fall outside of the agreed-upon fee, warrant an award beyond the original fee agreement. In this instance, however, the Court concludes that Judge Derby was well within his discretion to base his fee award on Jordan's February 11, 2003 Rule 2016(b) Disclosure.

In arguing before Judge Derby that he was entitled to compensation beyond his initial agreement, Jordan repeatedly referenced the 178 docket entries made in what should have been a relatively straightforward Chapter 13 case. See Tr. at 3, 9, 11, 33. Judge Derby, however, squarely placed the blame for the undue expansion of the pleadings and proceedings

---

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n. 28 (4th Cir. 1978).

on Jordan. He opined that "Mr. Jordan appears to have been pursuing an agenda that involved objectives of the Debtor other than the economical administration of this case and other than the securing benefit for the estate." Order Limiting Fees at 3.

A review of the record supports Judge Derby's conclusion and demonstrates that Jordan's efforts were generally of no benefit, either to the estate or to the Debtor. As detailed in Appellee's brief, Jordan filed numerous motions and objections that were without any merit and were denied or overruled by the Bankruptcy Court. See Appellee's Brief at 8-9, 14-15. Other activities for which Jordan sought compensation are clearly non-compensable under § 330, such as the 1.2 hours he claims for preparing his fee application. See In re Copeland, 154 B.R. 693, 703 (Bankr. W.D. Mich. 1993) ("This court ordinarily will not award attorney's fees for preparation of fee applications in the routine consumer chapter 13 case because such work does not benefit the estate but only the attorney requesting those fees.")

For the reasons stated, this Court finds no flaw in the Bankruptcy Court's reasoning and concludes that Judge Derby's findings are well supported by the record. Accordingly, the Court will affirm the decision of the Bankruptcy Court denying

Appellant's request for additional attorney's fees. A separate order will issue.

                                            _____/s/_____
                                            William M. Nickerson
                                            Senior United States District Judge

Dated: September 30, 2004

## Utility Events
1:04-cv-00050-WMN Jordan v. Liebmann

### U.S. District Court

### District of Maryland

Notice of Electronic Filing

The following transaction was received from eg, Deputy Clerk entered on 9/30/2004 at 3:58 PM EDT and filed on 9/30/2004
**Case Name:**          Jordan v. Liebmann
**Case Number:**        1:04-cv-50
**Filer:**
**WARNING: CASE CLOSED on 09/30/2004**
**Document Number:**

**Docket Text:**
***Civil Case Terminated. (eg, Deputy Clerk)

The following document(s) are associated with this transaction: